IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TYISHA DABNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:16-cv-297-HEH |
| ) | |
| CAR CONNECTION, INC., *et. al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

This matter is before the Court on Defendant Car Connection, Inc.'s ("Car Connection") Motion to Dismiss and Motion to Compel Arbitration, or, in the Alternative, Motion to Stay filed on June 24, 2016 (ECF No. 5) and Defendant Dana Bishop's ("Bishop") Motion to Dismiss and Motion to Compel Arbitration, or, in the Alternative, Motion to Stay filed on July 14, 2016 (ECF No. 12).

### I. BACKGROUND

This action arises from the sale and financing of a used vehicle. On August 5, 2015, Dabney purchased a Ford Taurus ("the vehicle") from Car Connection, an automobile dealership. (Compl. ¶ 6.) Plaintiff Tyisha Dabney's ("Dabney") primary allegations are that Car Connection failed to provide her an odometer disclosure and failed to disclose that the car had been previously repossessed. (Compl. ¶¶ 40, 43–45, 56, 62.) Dabney asserts three claims against Car Connection and Bishop (collectively, "Defendants"): (1) violation of the federal Motor Vehicle Information and Cost Savings

1

Act, 49 U.S.C. §§ 32101 et seq.; (2) violations of the Virginia Consumer Protection Act, Va. Code §§ 59.1-196 et seq., and (3) negligence. (Compl. ¶¶ 52–71.)

After Dabney purchased the vehicle, Car Connection sold its interest in the transaction to North State Acceptance LLC ("North State"). (Compl. ¶¶ 21–24.) At some point after the sale, North State provided Dabney with a copy of the contract it purchased from Car Connection, which was titled "Retail Installment Contract and Security Agreement" (the "Contract"). (Compl. Ex. C.) Dabney claims that her initials and signatures on the Contract were forged. (Compl. ¶ 28; Pl.'s Mem. Opp'n at 7.) Dabney also alleges the Contract does not reflect the terms of the transaction with Car Connection, noting that the price, sales tax, and down payment are all incorrectly stated. (Compl. ¶¶ 25–27.) Dabney claims that the true agreement between herself and Car Connection is a document titled "Buyer's Order," attached to Dabney's Complaint as Exhibit A. (Compl. ¶ 8.)

The Contract features a broad arbitration provision, while the Buyer's Order has no arbitration provision. The Contract states, in part:

> You or we [] may elect to resolve any Claim by neutral, binding arbitration and not by a court action. 'Claim' means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to:
> 1. the credit application;
> 2. the purchase of the Property;
> 3. the condition of the Property;
> 4. this Contract; . . .
> 6. any related transaction, occurrence or relation.

(Compl. Ex. C. at 4.)

2

Defendants moved to dismiss and compel arbitration, or stay the matter pending arbitration, arguing that the Contract's broad arbitration provision requires that the dispute over Dabney's signatures be resolved by binding arbitration. Defendants argue that whether Dabney signed the Contract is a question for the arbitrator to decide. Dabney contends that this Court, not an arbitrator, should allow focused discovery, hold an evidentiary hearing, and ultimately decide whether or not she signed the Contract.

## II. ANALYSIS

The Supreme Court has explained that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Nevertheless, it must be noted that the first principle of arbitration is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs v. Comm'n Workers of Am.*, 475 U.S. 643, 648 (1986) (internal citations omitted). Furthermore, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (citing *AT&T Techs.*, 475 U.S. at 649).

Defendants cite *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* in urging this Court to grant its motions. (Def. Car Connection's Mot. to Dismiss at 3.) The Supreme Court in *Prima Paint* reviewed the arbitrability question when faced with a claim of fraud in the inducement. 388 U.S. 395, at 396–97 (1967). In that case, the Supreme Court held

3

that a claim of fraud in the inducement was arbitrable because the fraud claim went to the contract as a *whole*, but "if the claim is fraud in the inducement of the arbitration clause *itself*... the federal court may proceed to adjudicate it." *Id.* at 403–04 (emphasis added). Courts have extended this holding beyond fraud in the inducement to include claims of unconscionability, frustration of purpose, mutual mistake, duress, coercion, and confusion in signing. *See, e.g., Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir. 1989) (overreaching, unconscionability, and fraud); *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 876 F.2d 809, 813–14 (4th Cir. 1989) (fraud in the inducement); *Coleman v. Prudential-Bache Sec., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) (per curiam) (contract of adhesion); *Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 529 (1st Cir. 1985) (mutual mistake and frustration of purpose); *In re Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 (5th Cir. 1981) (unconscionability, coercion, confusion, and duress).

Defendants maintain that this Court should apply the principle from *Prima Paint* by analogy to the current claim of forgery. (Def. Car Connection's Reply Mem. 5–6.) However, this principle has *not* been extended to apply "when the party seeking to avoid arbitration contends that it never assented in the first place to the contract containing the arbitration provision." *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002); *see also Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 855 (11th Cir. 1992) ("*Prima Paint* has never been extended to require arbitrators to adjudicate a party's contention, supported by substantial evidence, that a contract *never existed at all*."), *abrogated on other grounds by Bazemore v. Jefferson Capital Sys., LLC*, 2016 WL

4

3608961 (11th Cir. 2016). "The question of whether a valid agreement to arbitrate exists being an issue for the district court, the district court is required to decide the assent issue even though the issue goes to the making of the entire agreement." *Snowden*, 290 F.3d at 637.

Likewise, the Fourth Circuit has declined to extend *Prima Paint* to instances of alleged forgery. *See Gregory v. Interstate/Johnson Lane Corp.*, 1999 WL 674765 (4th Cir. 1999) (unpublished); *see also Snowden*, 290 F.3d 631. *Gregory* dealt with a very similar issue, in which a party claimed that their signature was forged on an agreement that included an arbitration agreement. Because the claim of forgery is an assertion that the party never agreed to arbitration, and indeed never agreed to the contract at all, the party claiming such forgery has the right to have the court, and not an arbitrator, decide whether or not there has been an agreement to arbitrate. *Gregory*, 1999 WL 674765 at *4. If a "dispute is over the very existence of the agreement to arbitrate, a district court, and not the arbitrator, must decide if the arbitration clause (indeed, the entire agreement) is enforceable against the parties." *Id.* at *7.

When claiming fraud in the inducement of a contract, a party admits signing the agreement, but simply argues that it cannot be enforced. *Monk v. Perdue Farms, Inc.*, 12 F. Supp. 2d 508, 509 (D. Md. 1998). In "sharp distinction" to a claim of fraud in the inducement of a contract, the allegation of forgery is a claim that one "never entered into the contract containing an arbitration clause in the first place," and such a claim "is for the Court to resolve prior to staying an action pending arbitration." *Id.*

Accordingly, this Court, not an arbitrator, must decide the question of whether or not the Plaintiff signed the relevant agreement, and thereby decide the question of arbitrability.

### III. CONCLUSION

For the reasons set forth above, the Court will order limited discovery and hold an evidentiary hearing to determine whether Dabney's signatures and initials on the Contract are authentic or forged, and thus whether the parties agreed to arbitrate this dispute. The parties will be responsible for exchanging all relevant documents, expert reports, and handwriting exemplars at least two weeks before the date of the evidentiary hearing.

Once this underlying factual issue has been resolved, the Court will then rule on the Defendants' two underlying motions (ECF Nos. 5, 12).

The Clerk is DIRECTED to send a copy of this Memorandum Order to all counsel of record.

It is so ORDERED.

/s/
Henry E. Hudson
United States District Judge

Date: Aug. 11, 2016
Richmond, Virginia